```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
PATRICK CAPUTO,

                Plaintiff,              04 Civ. 7078 (LLS)

        v.                              OPINION and ORDER

PNC BANK, PNC FINANCIAL SERVICES
GROUP, INC., PNC REALTY SERVICES,
LAND HOLDING INC. and LAND HOLDING,
LLC.,

                Defendants.
-----------------------------------x
PNC BANK, PNC FINANCIAL SERVICES
GROUP, INC., PNC REALTY SERVICES,
LAND HOLDING INC. and LAND HOLDING,
LLC.,

                Third-Party Plaintiffs,

        v.

PRUDENTIAL SERLS COMMERCIAL GROUP,

                Third-Party Defendant.
-----------------------------------x
```

Plaintiff's motion for summary judgment on liability is denied for the reasons that follow.

## Background

Plaintiff, Patrick Caputo, was employed by A & J Heating and Air Conditioning Services as a service technician in August 2003 when A & J was hired to "evaluate

the condition" of the HVAC[1] units located at 900 Corporate Boulevard in Newburgh, New York. The building was owned by defendant Land Holding Inc., a wholly-owned subsidiary of defendant PNC Bank NA s/h/a PNC Bank. Prudential Serls Commercial Group, third-party defendant, was the property manager.

In late spring of 2003 PNC Bank was arranging to rent 900 Corporate Boulevard and hired Favino Mechanical Service Inc. to inspect the HVAC units at the premises and make sure they were in proper working order. Once Favino submitted a service report, PNC Bank hired A & J to inspect the units and provide a second opinion.

On August 26, 2003, plaintiff and a few other men from A & J visited the site to assess what work, if any, needed to be performed on the units. Although the building had a fixed permanent interior ladder, they set up their own extension ladder to climb to the roof where some of the units were located. Plaintiff determined that one of the rooftop units needed to be serviced and returned the next day with another man to work on the unit. He again set up his own ladder to climb to the roof. While he was climbing the ladder it slid out from under him, and he fell, sustaining injuries.

---

[1] Heating Ventilation & Air Conditioning

The building's permanent ladder was located within a utility room. The ladder ran through a hatch in the ceiling of the utility room to a landing area and continued up to the roof. The door to the utility room was locked and Thomas LaPerch, the on-site property manager, was the only person with a key to the room. The parties disagree about plaintiff's access to that key.

Plaintiff alleges that he asked LaPerch for a key to the utility room so that he could use the permanent ladder to climb to the roof, and that LaPerch told him he did not have the key and could not get it. Plaintiff testified that LaPerch told him that everyone reached the roof by setting up their own ladder against the outside wall of the utility room and climbing to the top of the utility room, where the permanent ladder could then be used to climb to the roof.

LaPerch testified to the contrary, that he never told anyone to use a portable ladder to climb to the roof of the utility room to access the permanent ladder. He denied ever seeing anyone climb to the roof in that manner. He said that plaintiff never asked him for a key and denied ever telling anyone that he did not have the key to the utility room.

Caputo sues to recover damages. He moves for summary judgment on liability, arguing that by not making the permanent ladder available to him, defendants violated New York Labor Law § 240(1) as a matter of law.

1.

New York Labor Law § 240(1) states:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

"[A]n accident alone does not establish a Labor Law § 240(1) violation or causation. This Court has repeatedly explained that 'strict' or 'absolute' liability is necessarily contingent on a violation of section 240(1)." Blake v. Neighborhood Housing Services of New York City, 1 N.Y.3d 280, 289 (N.Y. 2003). "Where an owner or contractor fails to provide any safety devices, liability is mandated by the statute." Zimmer v. Chemung County Performing Arts, Inc., 65 N.Y.2d 513, 523 (N.Y. 1985).

Defendants did have a safety device. In the utility room near the loading dock area was a permanent ladder that

-4-

began at the ground level and extended all the way up to the roof. The ladder was an adequate safety device and would have provided plaintiff with proper protection when he climbed to the roof.

Defendants failed, however, to "furnish" the permanent ladder "to give proper protection" to plaintiff. Rather than being available for plaintiff's use, the ladder was locked away in the utility room and plaintiff did not have, and was not given, a key. That was a violation of the statute. Mr. LaPerch testified:

> Q. The building, the way it is situated today and the way it was situated in August of '03, how many ways are there to access the roof?
>
> A. Well, either A through the utility closet to access the interior ladder or I would assume you would try to use a ladder if you can't get in.

LaPerch Transcript, 110:22-111:5.

The statutory duty on defendants to furnish a safety device requires that the device be made available to provide proper protection for workers. Keeping the ladder inaccessible in a locked utility room violated that duty, even if the plaintiff had his own ladder, and could have asked (as he says he did) for a key to the room. Once that violation occurred, liability attached. As stated in Blake:

> Once the plaintiff makes a prima facie showing the burden then shifts to the defendant, who may

> defeat plaintiff's motion for summary judgment only if there is a plausible view of the evidence – enough to raise a fact question – that there was no statutory violation and that plaintiff's own acts or omissions were the sole cause of the accident.

1 N.Y.3d at 289 n.8.

Under Blake, the analysis of proximate cause is broadened to this extent: when the superior safety device was rendered inaccessible by the defendant, its absence required plaintiff to use a substitute. When that substitute failed, the unavailability of the superior device is regarded as a cause of the injury. This expresses the purpose of § 240 and the importance of deterring violations of it, even if a strict analysis at common law would have viewed the violation as too remote a cause to impose liability. Having installed the superior device, the owner renders it inaccessible at his peril.

2.

In order to be protected by the statute, plaintiff had to be performing one of the activities enumerated in the statute at the time of his accident. See Esposito v. New York City Industrial Development Agency, 1 N.Y.3d 526, 528 (N.Y. 2003)("Section 240(1) applies where an employee is engaged "in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or

structure."). The New York courts distinguish between repair work performed on HVAC units, which is covered under the statute, and routine maintenance of those units, which is not covered. See Esposito, 1 N.Y.3d at 528 ("Although repairing is among the enumerated activities, we have distinguished this from 'routine maintenance.'").

"Case law indicates that replacement of parts that wear out routinely should be considered maintenance, outside the purview of Labor Law § 240(1), as opposed to replacement of non-functioning components of a building or structure." Jehle v. Adams Hotel Associates, 695 N.Y.S.2d 22, 24 (N.Y. App. Div. 1999)(internal citations omitted). "'[B]ecause the devil is, as always, in the details,' the paramount issue becomes whether the item being worked on was inoperable or malfunctioning prior to the commencement of the work." Craft v. Clark Trading Corp., 684 N.Y.S.2d 48, 49 (N.Y. App. Div. 1999)(internal citations omitted).

Plaintiff argues that he was attempting to repair a malfunctioning rooftop HVAC unit on the date of his accident. He testified that "It seemed to be the igniter was not igniting, causing no heat from one of the units." Caputo Transcript, 46:14-16. However, the August 27, 2003 scope of work report submitted by A & J, plaintiff's employer, to PNC Bank describes the necessary work as

"SERVICE AND PERFORM PREVENTATIVE MAINTENANCE AT (2) GAS/HEATING ELECTRIC COOLING ROOFTOP UNITS." D'Erasmo Affirmation, Exhibit B. There is no mention of a malfunctioning unit.

The July 1, 2003 report and invoice from Favino is similarly devoid of any mention of a malfunction. It states, rather, that the "overall HVAC equipment condition appears to be good – very good." D'Erasmo Aff. Exhibit A. The report says that they "found only minor repairs required and for the most part will only require thorough service and maintenance," and the equipment breakout states that the individual units require merely "routine maintenance" or "only maintenance." Id.

There is no mention of a malfunctioning HVAC unit until the post-accident invoices. The September 12, 2003 Favino invoice states the following problem exists with the small packaged rooftop unit: "Heat does not energize. We have traced the problem to the 2 stage gas valve which requires replacement." Esposito Aff. Exhibit B. The September 22, 2003 A & J invoice lists parts of the units that were replaced and states "LARGE ROOFTOP UNIT NEEDS TWO STAGE GAS VALVE," but does not mention any heating problem or malfunction. Esposito Aff. Exhibit C.

Thus, the evidence does not establish as a matter of law that plaintiff was performing repair rather than maintenance work at the time of his accident. It is a mixed question of fact and law, which precludes summary judgment.

## Conclusion

Although defendants failed to furnish a proper ladder, it is unclear whether plaintiff was engaged in a protected activity at the time of his accident. Accordingly, plaintiff's motion for summary judgment is denied.

So ordered.

Dated: August 22, 2005
     New York, New York

*Louis L. Stanton*
Louis L. Stanton
U.S.D.J.